**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| E.E. CRUZ & COMPANY, INC., | CIVIL ACTION NO. 05-1523 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. |  |
| HARTFORD FIRE INSURANCE CO., |  |
| Defendant. |  |

**COOPER, District Judge**

This matter is before the Court on the motion of plaintiff, E.E. Cruz & Company, Inc. ("plaintiff"), which seeks (1) relief from portions of the Joint Statement of Undisputed Facts ("JSUF") it stipulated to with defendant, Hartford Fire Insurance Co. ("defendant"), (2) a determination that the law of New York is applicable to the parties' dispute, and (3) summary judgment as to the applicability of policy exclusion B(1)(f)(3). (Dkt. entry no. 31.) The Court will deny the motion.

                        **BACKGROUND**

Plaintiff filed a complaint against defendant on February 8, 2005, in New Jersey state court, seeking property insurance coverage under a builder's risk policy ("the policy") issued by defendant. (Compl., at 1.) The action was removed to this Court on March 18, 2005. (Dkt. entry no. 1.) The policy pertained to a construction job performed by plaintiff for the New York City Department of Environmental Protection ("NYDEP") on a "combined

sewer overflow retention facility located in Queens, NY" ("the facility"). (Compl., at 6.) Construction of the facility was still ongoing on September 8, 2004, when after significant rainfall, millions of gallons of water entered the facility, resulting in damage to plaintiff's equipment. (Magistrate Judge's 2-03-06 Mem. Op., at 2.) Plaintiff reported the claim for its equipment damage to defendant pursuant to the policy, and after completing an investigation defendant rejected plaintiff's claim under the policy. (Id.)

Plaintiff and defendant both sought summary judgment on the issue of whether exclusion B(1)(f)(3) in the policy bars coverage for plaintiff's loss before the Magistrate Judge on consent pursuant to Federal Rule of Civil Procedure 73.[1] (Dkt entry nos. 9, 10 & 12.) Both parties also stipulated to certain facts, documented in the JSUF. (Dkt. entry no. 11.)

---

[1] Subsection B(1)(f)(3) of the Section of the policy entitled "Exclusions" provides in relevant part:

> (1) We will not pay for "loss" caused directly or indirectly by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."
>
> . . . .
>
> (f)(3) Water under the ground surface pressing on, or flowing or seeping through foundations, walls, floors or paved surfaces, basements, whether paved or not, or through doors, windows or other openings.

(Dkt. entry no. 11, JSUF, Ex. 1, at 3-4.)

The Magistrate Judge found that "exclusion B(1)(f)(3) is unambiguous and directly applicable to the events resulting in damage to Plaintiff's equipment" and therefore denied summary judgment to the plaintiff on the applicability of policy exclusion B(1)(f)(3) and granted summary judgment to the defendant on the same issue. (2-03-06 Mem. Op., at 11.) Plaintiff appealed from the Magistrate Judge's order to this Court, but subsequently withdrew that appeal. (See dkt. entry nos. 20 & 21.) Following the plaintiff's withdrawal of the appeal, Lowenstein Sandler PC withdrew as plaintiff's counsel and McDonough Marcus Cohn Tretter Heller & Kanca L.L.P. entered an appearance as attorney of record for plaintiff. (Dkt. entry nos. 22 & 23.)

Plaintiff now moves for relief from paragraphs 5, 7, 8 and 11 of the JSUF:

> 5.  The underground Facility was constructed alongside of a preexisting 10 foot by 100 foot sewer line ("Sewer"), also located underground.
>
> 7.  During construction, the Facility was connected to the Sewer via openings termed "access hatchways" that had been cut into the Sewer.
>
> 8.  The access hatchways were sealed with plywood covers in order to prevent the contents of the Sewer from entering the Facility.
>
> 11. On September 8, 2004, millions of gallons of water entered the Facility through the access hatchways.

(Dkt. entry no. 11, JSUF, at 2; Pl. Br., at 4.) Plaintiff alleges that the "true facts" as set forth in the affidavit of Charles J. Montalbano, a licensed civil engineer, reveal the

inaccuracies in the JSUF. (Dkt. entry no. 32, "Montalbano Aff.".) According to plaintiff, the "true facts" are as follows:

> [T]he facility was not constructed alongside the Overflow Sewer. Instead, the Overflow Sewer crossed within and through the interior of the Facility and the reinforcement thereof was part of the contract work of the plaintiff. Thus, the Facility was not connected to the Overflow Sewer via openings. Instead, three small temporary cuts in the Overflow Sewer were sealed in May of 2003 and remained sealed for more than a year until September 8, 2004 when the loss occurred. . . . [T]he water did not enter the Facility. Instead, fluids within the Overflow Sewer, which was in turn within the Facility, became pressurized and two of the seals burst. The fluids that suddenly escaped from the Overflow Sewer within the Facility, and burst into the Facility, never came in contact with or passed through any soil, earth or ground.

(Pl. Br., at 5.)

## DISCUSSION

### I. Plaintiff's Motion to Be Relieved from Part of the JSUF

"[A]bsent an express limitation or a clear manifestation of intent to the contrary, pretrial stipulations remain binding between parties during subsequent proceedings." Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur., 71 F.Supp.2d 394, 396 (D.N.J. 1999). "[I]t is a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside." Waldorf v. Shuta, 142 F.3d 601, 616 (3d Cir. 1998); see Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., 222 F.3d 123, 129 n.7 (3d Cir. 2000) (stating same). Stipulations "promote judicial economy" and "narrow[] the issues in dispute during litigation"

4

and allowing parties to set aside or modify stipulations would defeat their purpose.  <u>Waldorf</u>, 142 F.3d at 616.

A party may successfully withdraw from a stipulation, however, if the court finds the moving party has demonstrated "exceptional circumstances" and that without relief from the stipulation the moving party would suffer "manifest injustice." <u>Id.</u> at 614 (citations omitted); <u>see</u> <u>Chemical Leaman</u>, 71 F.Supp.2d at 396 (stating same).  The Court considers four factors in determining whether enforcement of the stipulation will create a manifest injustice: "(1) the effect of the stipulation on the party seeking to withdraw the stipulation, (2) the effect on the other parties to the litigation, (3) the occurrence of intervening events since the parties agreed to the stipulation, and (4) whether evidence contrary to the stipulation is substantial."  <u>Waldorf,</u> 142 F.3d at 617-18.  After considering these factors, the Court concludes that it would not be manifestly unjust to enforce the JSUF in its entirety and deny plaintiff's request for relief from the JSUF.

    **A.   Effect of the Stipulation on the Party Seeking To Withdraw the Stipulation**

"As the party seeking to free itself from the stipulation," plaintiff has not met its obligation to provide this Court with "competent evidence of the manifest injustice to it from binding it to the stipulation."  <u>Id.</u> at 618.  According to plaintiff, the "true facts are very different from those in the [JSUF]."  (Pl.

Br., at 7.)  In support of this argument, plaintiff provides the affidavit of Charles J. Montalbano, a licensed civil engineer, which plaintiff alleges outlines the correct facts.  (See Montalbano Aff.)

The allegedly corrected facts set forth in plaintiff's brief and Montalbano's affidavit principally rely on figure D-1.6.0.G ("the figure"), a drawing of the facility and adjacent area, including the Overflow Sewer, that was created by NYDEP's designers.  (Montalbano Aff., at Exh. 1.)  The figure was "part of the specifications to the construction contract between plaintiff and the City of New York for the Facility" and "referenced in ¶ 2 on the first page of the policy (DEF 00026) which was annexed as Exhibit '1' to the [JSUF]."  (Pl. Br., at 7.)

The plaintiff's arguments of prejudice are belied by the fact that the information they rely upon to discredit the JSUF was available at the time the parties entered into the stipulation.  See Chemical Leaman, 71 F.Supp.2d at 397; Waldorf, 142 F.3d at 618.  Plaintiff avers that the affidavit of Charles J. Montalbano sets forth the "true" facts, but his affidavit does not cite to or rely upon any new or previously unavailable evidence and instead relies principally on the figure plaintiff admits it was familiar with prior to agreeing to the terms of the JSUF.  Plaintiff's request for relief from the JSUF is the type of "evidential rethinking and other morning-after quarterbacking" prohibited as

grounds for relief from a stipulation, and any prejudice suffered by plaintiff "is grounded upon its own failure to exercise due diligence with respect to the pre-trial stipulations." Chemical Leaman, 71 F.Supp.2d at 397.

**B.     The Effect on the Other Parties to the Litigation**

Plaintiff appears to argue that there would be no prejudice to defendant if the Court were to grant plaintiff's motion because "Hartford has not changed its position nor acted to its detriment in reliance upon the [JSUF].  Plaintiff has moved in a timely manner to be relieved from a portion of the [JSUF].  There have been no depositions.  No trial date has been fixed." (Pl. Br., at 15.)  Defendant's opposition papers, however, aptly point out that defendant would suffer prejudice if the Court permitted plaintiff to withdraw from the stipulation due to the substantial time and legal fees incurred when the parties sought summary judgment before the Magistrate Judge, which the Magistrate Judge decided after the parties stipulated to the JSUF and filed it with the Court.  (See Def. Br., at 13; dkt. entry no. 11.)

The Court would effectively nullify the summary judgment decision issued on the consent of both parties by the Magistrate Judge if the Court were to grant plaintiff's motion.  This is the outcome the plaintiff ultimately seeks, as demonstrated by its inexplicable request that this Court grant summary judgment on the applicability of policy exclusion B(1)(f)(3), a request that

7

is identical to the request previously before the Magistrate Judge.  The Court finds that in this case, granting plaintiff relief from stipulations already agreed upon by the parties and submitted to the court "undermines the certainty and judicial economy that stipulations are intended to provide." Chemical Leaman, 71 F.Supp.2d at 398.

Plaintiff's request for relief from the JSUF is nothing more than a thinly veiled attempt to avoid the consequences arising from the Magistrate Judge's summary judgment decision on the applicability of exclusion B(1)(f)(3).[2]  In concluding that exclusion B(1)(f)(3) barred coverage for plaintiff's loss under the policy, the Magistrate Judge relied upon the JSUF.  (See 2-03-06 Mem. Op., at 1-3 (citing the JSUF).)  Plaintiff's request that this Court relieve it from portions of the JSUF collaterally attacks the Magistrate Judge's decision by attempting to nullify those facts most unfavorable to its position before the Magistrate Judge.  Plaintiff's claim that this motion does not re-argue the decision of the Magistrate Judge ignores that the Court could not

---

[2]     Plaintiff's claims that its motion "is not a motion to reargue the opinion and order of [the Magistrate Judge], nor is it an appeal to the District Court Judge from said opinion and order of the Magistrate" and that the "current motion of the plaintiff is not within the ambit of said previous order of reference to the Magistrate Judge" are correct insofar as they refer to its request that this Court relieve it from certain portions of the JSUF.  The Court, however, cannot decide this request without considering the context surrounding the JSUF, i.e., since the parties entered the JSUF, the Magistrate Judge has decided their requests for summary judgment.

relieve plaintiff from portions of the JSUF without undermining the Magistrate Judge's decision.  The Court concludes that relieving plaintiff from the JSUF would not only substantially prejudice the defendant but "prejudice the judicial process" and this Court as well.  Chemical Leaman, 71 F.Supp.2d at 398.

### C. The Occurrence of Intervening Events Since the Parties Agreed to the Stipulation

In applying this "critical factor," the Court must ask "whether a <u>subsequent</u> change of circumstances was so dramatic that strict adherence to the pretrial stipulation would result in manifest injustice."  Id. (citation and quotations omitted).  In Waldorf, the party seeking relief from the stipulation based its request on evidence that was in its control prior to the stipulation.  See Waldorf, 142 F.3d at 601.  The Court in Waldorf rejected the request to rescind the stipulation because the moving party did not "claim that the evidence is the product of an intervening event or that it previously could not have discovered the evidence."  Id.

As in Waldorf and Chemical Leaman, plaintiff's argument here is not based on newly acquired or discovered evidence.  Plaintiff argues that both it and the defendant "made mutual mistakes in the language employed in the [JSUF]."  (Pl. Br., at 7.)  Plaintiff seeks to remedy this "mistake" by introducing a new affidavit purporting to clarify the "true" facts.  (See Montalbano Aff.)  This affidavit, however, only relies upon

9

Montalbano's reinterpretation of the facts based on his review of the same figure of the facility that the parties relied upon in drafting the JSUF.  (See Id., at 6.)  Plaintiff's claim of mistake in drafting the JSUF is not supported by any new evidence revealing inaccuracies in the JSUF discovered by plaintiff after entering into the JSUF.  The Court concludes that plaintiff's alleged recent discovery of the "mutual mistake" made by the parties in drafting the JSUF is not an intervening event that would make it manifestly unjust for the Court to uphold the JSUF.

### D. Whether Evidence Contrary to the Stipulation is Substantial

Plaintiff cites to the following "reservation" at the end of the JSUF in further support for relief from portions of the JSUF:

> The parties agree that these facts are not in dispute. However, the parties recognize that there are other facts that are relevant to the dispute not set forth above and that additional facts may be developed in the event discovery proceeds.  Both parties preserve their rights to develop additional facts and to present additional facts in any other motions that may be filed and at trial.

(Dkt. entry no. 11, JSUF, at 2; Pl. Br., at 4.)  A plain reading of this "reservation" does not support plaintiff's efforts to change or be relieved from the JSUF; the "reservation" only addresses the addition of facts not yet discovered by the parties. Although "a stipulation does not continue to bind the parties if they expressly limited it to the first proceeding or if the parties intended the stipulation to apply only at the first

10

trial," plaintiff does not argue this, and this Court's reading of the "reservation" does not reveal that either party intended to limit the JSUF's application during litigation. Waldorf, 142 F.3d at 616.

The only other evidence offered by plaintiff in support of the argument that certain stipulated facts are untrue is Figure D-1.6.0.G and the affidavit of Montalbano. (Pl. Br., at 10.) For the reasons previously noted in this memorandum opinion, the Court does not find that this evidence provides substantial evidence in support of plaintiff's request for relief from the JSUF. The Court therefore concludes that the evidence submitted by plaintiff does not provide substantial evidence contrary to the JSUF.

**II. Plaintiff's Motion for Summary Judgment**

Plaintiff's motion insofar as it seeks summary judgment on the applicability of policy exclusion B(1)(f)(3) impermissibly seeks to re-litigate the same issue that was before the Magistrate Judge during the parties' prior requests for summary judgment. (See dkt. entry nos. 10 & 12.) Both plaintiff's request for summary judgment before the Magistrate Judge and plaintiff's request for summary judgment before this Court seek a decision that policy exclusion B(1)(f)(3) is not applicable to plaintiff's loss. (Compare dkt entry no. 10-3, "text of proposed order," with dkt. entry no. 31, "notice of proposed motion".)

The arguments advanced by plaintiff in support of the summary judgment motion insofar as they seeks to re-litigate the issues before the Magistrate Judge are not properly before this Court.  Where, as here, the parties execute a "Consent to the Exercise of Jurisdiction by a United States Magistrate Judge" pursuant to 28 U.S.C. § 636(c), "appeal from a judgment entered upon direction from a magistrate judge in proceedings under this rule will lie to the Court of Appeals as it would from a judgment of the district court."  Fed.R.Civ.P. 73; see Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 200 n.7 (3d Cir. 2004) (noting that 28 U.S.C. § 636(c)(3) gives the United States court of appeals jurisdiction to review an order entered by a magistrate judge pursuant to § 636(c)(1), to the extent it is final under 28 U.S.C. § 1291).  The Court will therefore not address the merits of plaintiff's motion insofar as it seeks summary judgment.

The Court will also not address the merits of plaintiff's motion insofar as it seeks a determination that the law of New York applies to the parties' insurance dispute.  Even though plaintiff and defendant now agree that the law of New York applies to the parties' dispute, when the same issue was before the Magistrate Judge, plaintiff took the position that New Jersey law applied to the dispute.  (See Pl. Br., at 15; Def. Br., at 26.)  This makes the issue more complex than merely asking this Court to approve the recent agreement of the parties that New

12

York law applies to their dispute.[3]  The Court concludes that plaintiff's request for a determination that the law of New York applies to the parties' insurance dispute should be decided by the Magistrate Judge, who already addressed the choice of law issue.

**CONCLUSION**

The Court will deny plaintiff's motion for (1) relief from portions of the JSUF, (2) a determination that the law of New York is applicable to the parties' insurance dispute, and (3) summary judgment as to the applicability of policy exclusion B(1)(f)(3).  The Court will issue an appropriate order.

       s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

---

[3]     Plaintiff not only asks this Court for a determination that the law of New York applies, but also asks the Court to consider the following alleged errors in the Magistrate Judge's Choice of Law analysis: (1) "when the Magistrate concluded that under New Jersey law exclusion B.1.f(3) did not distinguish between natural or man-made water damage, she failed to determine the New York law on the issue and whether the New York Law varied from that of New Jersey" (Pl. Br., at 16) and (2) "the Magistrate [Judge] did not expand upon the reasonable expectations doctrine in New York." (Id. at 19.)  These types of arguments should have been raised in a motion for reconsideration of the Magistrate Judge's decision or on appeal to the Third Circuit, and not in a motion before this Court.